(30 Misc. Rep. 261.)

CHURCH v. STANDARD RAILROAD-SIGNAL CO.

(Supreme Court, Special Term, New York County. January, 1900.)

1. LANDLORD AND TENANT—OPTION TO LESSEE TO PURCHASE—AGREEMENT FOR FORFEITURE—CONSTRUCTION.

By the terms of a lease, the lessee was given an option to purchase the leased premises during his term; and it fixed March 31, 1899, as the date for the delivery of the deed and payment of the purchase price, but provided that if such option was not exercised on the expiration of the lease, on December 31, 1898, the lessee should pay the sum of $5,000 as additional rental, unless prevented from exercising such option because of the inability of the lessor to furnish a good title. *Held*, that the lessee was not liable for the payment of the $5,000 if the lessor's title continued defective up to December 31, 1898, though he may have been able to furnish a good title on March 31, 1899, when the deed was to be delivered.

2. PLEADING—ANSWER—CLERICAL ERRORS—DEMURRER.

Where, in an action on a contract by an assignee, defendant's answer contains references to the "plaintiff," where the obvious intention was to refer to the assignor of the contract, it is not subject to demurrer on such ground; the defect being of the unsubstantial character contemplated by Code Civ. Proc. § 723, providing that at every stage of an action the court shall disregard defects which do not affect the substantial rights of the parties.

Action by George H. Church against the Standard Railroad-Signal Company for money agreed to be paid under a lease. Plaintiff demurred to defendant's answer as insufficient in law. Demurrer overruled.

Shearman & Sterling (Cortland Betts, of counsel), for plaintiff.

Masten & Nichols (Arthur H. Masten and James D. Layng, Jr., of counsel), for defendant.

GIEGERICH, J. The action is brought upon an assigned claim for $5,000, based upon certain provisions of a lease made by the plaintiff's assignor to the defendant, and framed as below:

"At any time before the expiration of this lease, the party of the second part, having first satisfied itself that the party of the first part can convey to it a good and valid title in fee to the said premises, free and clear of all incumbrances, may purchase the said premises for the sum of seventy thousand dollars ($70,000), to be paid as follows. [The method of payment then detailed.] On March 31, 1899, at 12 o'clock noon, at the office of the party of the first part, in New York City, the said purchase price shall be paid as aforesaid; and a deed, which shall vest the title to the said premises in fee simple in party of the second part, shall be executed and delivered to it, conveying the said premises to the party of the second part free of all incumbrances, except taxes which may become a lien thereon subsequently to January 1, 1899. In case the party of the second part should not exercise the right to purchase the said premises as aforesaid, it shall, upon the expiration of this lease, on December 31, 1898, pay to the party of the first part, as additional rental, the sum of five thousand dollars ($5,000); the rental of $5,000 per annum hereinbefore reserved being reduced to that sum solely as an inducement to the party of the second part to exercise the said option. If, however, the party of the first part should be unable to convey to the party of the second part a good and sufficient title in fee simple to the said premises, free of all incumbrances, and the party of the second part should not be able to exercise the said option on that account, then the party of the second part shall not be obliged to pay the said additional sum of five thousand dollars ($5,000)."

The defendant did not exercise the option to purchase, and the question now presented by demurrer to affirmative matter in the answer is whether the fact that the plaintiff's assignor, the lessor, had a defective title up to December 31, 1898, sufficed to release the defendant from the payment of $5,000 as provided in the lease. It is contended by the plaintiff that the state of the title did not become material until March 31, 1899, the date when delivery of the deed was to be made, while the defendant argues that the rights of the parties depended upon the lessor's title as it stood on December 31, 1898, the day when the $5,000 became payable by the defendant in the event of its unexcused failure to exercise the option to purchase. The intention of the parties to the instrument must be looked for in the words employed by them, and effect should be given to all the provisions expressed. Examining this

agreement with a reasonable regard to its apparent purpose, I must conclude that the defendant's construction is correct, and that it had the right to base its refusal of the option upon the condition of the title as existing at the termination of the lease. To adopt the plaintiff's view would be to hold that there was an absolute contract of purchase, succeeding the lease, binding the purchaser in stipulated damages, subject only to the vendor's ability to offer a good title upon the day fixed for closing. This, however, not only involves a disregard of the parties' characterization of the right as an "option," but must nullify the provision that the defendant should make the purchase, having first satisfied itself, before December 31, 1898, that the lessor "can convey to it a good and valid title," since, if the ability to convey was to be considered as of a date three months later, the defendant would have been unable to determine, from an examination of the title at the earlier date, whether the existing defects would be remedied or not; and hence there could be no basis for the purchaser's "satisfaction," nor any test of the reasonableness of its dissatisfaction. Moreover, the agreement was that if the defendant should not be able to exercise the option, because of the lessor's inability to give an unincumbered title, then it should not be obliged to pay the $5,000; but, this being the case, the only reasonable meaning is that the excuse from the payment was to arise, if at all, from the facts as they existed at the time when the payment, unless excused, was due. That time was the 31st of December, 1898, and it would do violence to the clear wording of the instrument to say that a payment due at this specified date was to be then made, unless excused by facts appearing three months afterwards. I think that the allegations as to the defective condition of the title are sufficient as statements of the ultimate facts, in view of the nature of the issues, and that, while greater particularity might be required, upon proper motion, the averments are not to be viewed as mere conclusions of law.

Nor would it appear that the demurrer should prevail upon the technical defect disclosed by the defendant's reference to the "plaintiff" in some instances, where the obvious intention was to refer to his assignor of the claim in suit, since here the error or defect seems to be of the unsubstantial character contemplated by section 723 of the Code of Civil Procedure, and thus to be disregarded. The demurrer must therefore be overruled, with costs.

Demurrer overruled, with costs.